ROSSELOT ET AL., APPELLEES, *v.* HEIMBROCK ET AL.; SWOB, APPELLANT.

(No. CA88-02-015—Decided
September 30, 1988.)

*Drew, Ward & Graf Co., L.P.A.,*
and *Richard G. Ward,* for appellees.
*Michael A. Kennedy,* for appellant.

*Per Curiam.* This is an appeal by
defendant-appellant, Jay Douglas
Swob, trustee, from a judgment of the
Court of Common Pleas of Clermont
County which granted plaintiffs-appel-
lees, Robert C. Rosselot and Linda P.
Rosselot, foreclosure upon their ven-
dors' lien against Lot 273 in Longfield
Acres Subdivision, Section 4 ("Lot
273").

On December 30, 1986, appellees
filed a foreclosure action against ap-
pellant and others. In their complaint,
appellees alleged they had conveyed
title to Lot 273 to Steve and Mary
Heimbrock, who had conveyed that
title to appellant. Upon conveying title
to the Heimbrocks, appellees alleged
the Heimbrocks executed a "Vendors'

Lien Agreement" ("a second mort-
gage") with them in which the Heim-
brocks agreed both to assume appel-
lees' obligation on a first mortgage to
North Central Financial Corporation[1]
and to pay appellees $171.22 per
month on a $10,000 promissory note
secured by a second mortgage. Appel-
lees claim appellant received title to
Lot 273 from the Heimbrocks subject
to both obligations, that he had de-
faulted upon the second promissory
note mortgage, and thereby entitled
appellees to accelerate that note and
foreclose upon their second mortgage.

Shortly after filing their com-
plaint, appellees filed motions re-
questing the appointment of a receiver
and to deposit certain checks with the
court. Although the motion to appoint
a receiver was subsequently with-
drawn, the court, on January 13, 1987,
permitted appellees to deposit $684.88
(four checks in the amount of $171.22)
with the clerk of court.[2]

On September 9, 1987, appellees
moved for summary judgment on their
complaint. Appellant responded by fil-
ing a cross-motion for summary judg-
ment. After considering each party's
motion, the court, on November 4,
1987, filed a decision granting ap-
pellees' motion and overruling ap-
pellant's. That decision found that
reasonable minds could only conclude
that appellant had defaulted upon his
obligations under the second mortgage
and that appellees were therefore en-
titled to accelerate their note.

On January 19, 1988, the court
entered a judgment in appellees' favor
for $6,290.62, and ordered Lot 273
sold while still subject to the first mort-
gage.[3] This appeal followed.

In his brief before this court, ap-

[1] The Heimbrocks assumed and agreed
to pay this first mortgage in the Vendors'
Lien Agreement they executed when they
purchased the property from appellees.

[2] On July 13, 1987, the court granted

appellees' motion to withdraw this $684.88
and apply it to the outstanding balance.

[3] The first mortgagee, North Central
Financial Corporation, was never made a
party to this action.

pellant raises a single assignment of error which states:

"The trial court erred to the prejudice of the appellant, Jay Douglas Swob, Trustee, in overruling his motion for summary judgment and in granting the appellees' motion for summary judgment."

In support of his sole assignment of error, appellant makes two arguments. First, he contends appellees have waived their right to foreclose by accepting payments both before and after the filing of the instant action which brought him current on his payments. Second, appellant submits that the supporting materials filed below demonstrate the existence of a genuine issue of material fact — more specifically, that appellant complied with his obligations under the second mortgage.

In *Wheatstone Ceramics Corp.* v. *Turner* (1986), 32 Ohio App. 3d 21, 513 N.E. 2d 348, paragraph two of the syllabus, this court recognized that a mortgage foreclosure action involves two issues: the first is whether the mortgagor has defaulted upon the terms of the mortgage, and the second is whether the mortgagor's equity of redemption should be cut off. We find that by addressing these issues we can both answer appellant's arguments and dispose of the instant appeal.

Under the terms of the promissory note accompanying the second mortgage herein, the vendee was required to make monthly payments of $171.22 on the twenty-sixth day of each month to appellees at their address in Guilford, Indiana. The second mortgage further provided that if the vendee "shall fail to make two installment payments when due by the terms of said Note to Vendors, the said Note

shall be accelerated and the entire balance shall be due and payable."

Appellant contends a genuine issue of material fact exists because he averred in an affidavit filed in support of his motion for summary judgment that he made a timely payment of his October and November 1986 installments by mailing them in a single envelope to appellee on or about November 23, 1986. This averment notwithstanding, an examination of a photocopy of the envelope in which those payments were mailed discloses it bears a December 1, 1986 postmark, and appellees stated they received it on December 3, 1986. The $10,000 promissory note in the record before us states payments are due and payable at appellees' Guilford, Indiana, address. We therefore are not persuaded that the simple act of mailing the payment, whenever that took place, determines whether appellant's payment was timely. Instead, the determinative factor for purposes of default is the date the payment was received by the mortgagee.[4]

Because appellant's October and November 1986 payments were due October 26 and November 26 respectively, but were not received by appellees until December 3, 1986, we have no difficulty in concluding appellant defaulted on the terms of the second mortgage before us. However, simply because appellant defaulted on the terms of his obligation to appellees does not automatically entitle them to foreclose because foreclosure of a mortgagor's equity of redemption is a separate question from the existence of a default on the underlying obligation. *City Loan & Savings Co.* v. *Howard* (1984), 16 Ohio App. 3d 185, 16 OBR 195, 475 N.E. 2d 154, para-

---

[4] To hold otherwise, *i.e.,* that payment is accomplished upon mailing, would mean that a payment that is never received could still be considered to have been made because it was mailed.

graph three of the syllabus. Accordingly, once a court has determined that a default on an obligation secured by a mortgage has occurred, it must then consider the equities of the situation in order to decide whether foreclosure is appropriate. *Wheatstone Ceramics Corp., supra.* In the case *sub judice,* we are not persuaded foreclosure was appropriate.

While appellant defaulted upon the terms of the second mortgage to which Lot 273 was subject when he failed to make timely payments on October 26 and November 26, 1986, appellant did send appellees checks for those months which they received on December 3, 1986. Appellees submit the two checks were out of time and did not cure appellant's default because the note had already been accelerated. We disagree.

Prior to their receipt of appellant's two checks on December 3, 1986, appellees did not notify appellant that they considered his failure to make his October and November payments on time to be a default entitling them to accelerate their promissory note, nor did they return his October and November payments even though they did not consider them to be sufficient. In *Gallaher* v. *Fryman* (June 23, 1986), Butler App. No. CA85-11-089, unreported, this court held it was error to order a foreclosure and sheriff's sale where the mortgagee *even after notifying the mortgagor of acceleration* received and retained a $1,800 cashier's check without cashing it, but refused to either return it to the mortgagor or apply it to the amount due.

While a cashier's check was the payment mechanism in *Gallaher* and appellant used ordinary checks, it is undisputed that appellant was never notified by appellees of any acceleration of the $10,000 promissory note until appellees filed suit, and by that time appellees had already received and retained appellant's October and November payments.

Based on our decision in *Gallaher, supra,* we find that when appellees received appellant's two checks they were not privileged to hold them and subsequently claim their promissory note was accelerated upon the filing of their foreclosure action. Rather, they could either return the checks to appellant noting they were insufficient because appellees considered the note to have been accelerated by appellant's prior default or they could apply them to appellant's obligation. By retaining appellant's checks and refusing to negotiate them until after a foreclosure action was instituted so they could deposit them with the clerk of court, appellees indeed were able to, in the words of *Gallaher, supra,* "have * * * [their] cake [enjoy assurance of the receipt of the payments they claimed were in default] and eat it too" (still foreclose upon their second mortgage).

Since acceleration of the remaining balance due on a note is not automatic upon a default but rests at the discretion of the lender, *Corkins* v. *Tietmeyer* (1936), 6 O.O. 254, 4 Ohio Supp. 295, appellees' unexplained failure to either inform appellant that they intended to accelerate their note prior to their December 3, 1986 receipt of appellant's two checks, or to return them and inform appellant they were insufficient due to the note's prior acceleration, appellees waived their right to rely on appellant's now cured default and the subsequent filing of their complaint did not accelerate their note. *In re Land* (1981), 14 Bankr. 132; *Reverman* v. *Newman* (1926), 24 Ohio Law Rept. 486; *Nixon* v. *Buckeye Bldg. & Loan Co.* (App. 1934), 18 Ohio Law Abs. 261, 264. In the final analysis, whether it be termed a waiver, see *Reverman, supra,* or tender, see *First Fed. S. & L. Assn.* v. *Stone* (Ind. App. 1984), 467 N.E. 2d 1226, it is certainly inequitable for a mortgagee to file a foreclosure suit claiming an acceleration of a promissory note has occurred

due to a default on a note secured by a mortgage when that same mortgagee has an unopened envelope containing the very payments which are claimed to be in default.[5]

Our conclusion regarding the equitable principles involved herein is further buttressed by the fact that appellant's affidavit filed in support of his motion for summary judgment states he is completely current on his mortgage payments.

In light of the foregoing, we sustain appellant's sole assignment of error and reverse the judgment of the court below insofar as it entered a judgment accelerating appellees' note, ordering appellant's equity of redemption be foreclosed and that a sheriff's sale of Lot 273 take place. However, in view of the fact that appellant did default on his obligation to appellees, we refuse to find summary judgment in his favor was appropriate.

We remand this case to the court of common pleas so that it may fashion an appropriate remedy short of foreclosure for appellant's default upon his obligation.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.

---

[5] Appellees make much of the fact that they did not open the envelope containing the two late payments and that when they did open it (after suit was instituted), they immediately deposited the checks with the clerk of courts. However, it appears from appellees' affidavits that they knew on December 3, 1986 that the envelope contained the late payments because they gave it to their lawyer to open. Clearly, appellees knew they had received and were holding appellant's overdue mortgage payments when they filed suit and declared for the first time in their complaint that their mortgage was accelerated due to appellant's default.